FILED

IN THE UNITED STATES BANKRUPTCY COURT

2001 SEP 12 P 4: 17

FOR THE

U.S. BANKRUPTCY COURT
AUGUSTA, GA

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

IN RE:                             )          Chapter 7 Case
                                   )          Number 04-12224
Darrin Kent Moyer,                 )
                                   )
        Debtor                     )
_____     )
                                   )
A. Stephenson Wallace,             )
Chapter 7 Trustee                  )
                                   )
        Movant                     )
_____     )
                                   )
Keith Stille                       )
and                                )
QZO, Inc.                          )
                                   )
        Objectors                  )
_____     )

## ORDER

Before the Court is the Chapter 7 Trustee's Motion to Sell Free and Clear of Liens Debtor's stock in Regional Ambulance Service, Inc. ("Regional") to Debtor, and Objection thereto filed by Keith Stille and QZO, Inc. (collectively "QZO"). This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). The Court has jurisdiction under 28 U.S.C. §1334. For the reasons set forth below the Court denies the Trustee's motion to sell.

## FINDINGS OF FACT

At a hearing to consider the motion, Debtor[1] testified he started his ambulance company, Regional, around 2001 after leaving the employment of QZO. Regional is not in bankruptcy. Since Debtor filed his bankruptcy petition Regional's stock value has allegedly increased by over three hundred thousand dollars. There is no dispute that the Regional stock owned by Debtor became property of the bankruptcy estate when Debtor filed his bankruptcy petition. The issue is whether the post-petition increase in stock value is property of the bankruptcy estate. If the increase is property of the estate, the sale proceeds will be distributed to Debtor's creditors; however, if the increase is not property of the estate, Debtor is entitled to these funds.

To analyze this issue, it is important to distinguish between Debtor and Regional. Regional is a South Carolina corporation. Regional is not in bankruptcy and continues to provide ambulance services. Regional has been filing its taxes as a subchapter-S corporation.[2] Debtor owns 100% of the outstanding

---

[1] Debtor filed for chapter 13 relief on June 29, 2004. Debtor filed a Motion to Convert to a chapter 7 and his case was converted on January 28, 2005. This case is not subject to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

[2] As discussed later, at the hearing and initial briefs Debtor's counsel asserted Regional was a subchapter-S corporation. See Dckt. #266, #276 and #283. However, Debtor's counsel has

AO 72A
(Rev. 8/82)

stock of Regional.  Upon Debtor's filing for bankruptcy protection, this stock became part of Debtor's bankruptcy estate pursuant to 11 U.S.C. §541(a)(1).  Debtor testified he receives a salary of approximately $75,000.00/year from Regional.  Regional has more than 120 employees consisting of EMTs, call-intake operators, mechanics, clerical/bookkeeping staff, managers and public relations staff, etc.  It also has a fleet of approximately 40 ambulances.  The company contracts with health care facilities and, according to Debtor's testimony, as is customary in the industry, these contracts may be cancelled upon thirty (30) days notice.

The Trustee filed his motion to sell Debtor's Regional stock to Debtor free and clear of liens for $400,000.00 in accordance with the terms of a December 7, 2006 Sales Agreement between Debtor and Trustee.  The Sales Agreement provides in pertinent part:

- At closing, Debtor agrees to pay $200,000.00 in cash, the balance to be paid with 6% interest in twelve (12) monthly payments secured by a lien on the stock and assets of Regional.

- Debtor agrees to assume all of Regional's outstanding debt.

---

subsequently filed a letter indicating that the IRS does not consider Regional to be a sub-S corporation and Regional cannot find any evidence of ever making a sub-S election.  See Dckt. #287.

3

- Debtor agrees to waive any rights he has to any of the sale proceeds under 11 U.S.C. §541(a)(6). Conversely, Debtor expressly reserves his right to such proceeds if the sale is consummated to a third party. Debtor further reserves his right to refuse to give a covenant not to compete if the sale is consummated to a third party.

It is this last provision that is at issue in this case. QZO objects to the sale, arguing it has made an offer of approximately $500,000.00 in cash, which is $100,000.00 more than Debtor's offer. QZO further contends the Trustee is entitled to all of the increase in stock value because it is "profits, rents, product, proceeds of or from property of the estate" and therefore is property of Debtor's bankruptcy estate.[3] Conversely, Debtor asserts QZO's offer will actually net less to the bankruptcy estate because Debtor is entitled to the post-petition increase in stock value since it represents "earnings from services performed by [Debtor] after the commencement of the case" and is not property of the bankruptcy estate. As discussed below, the Court concludes any post-petition increase in Regional's stock value is profits and proceeds of or from property of the estate and not earnings from

---

[3]   QZO also objects to the Debtor's claimed exemptions regarding his interest in Regional. In response, Debtor amended his exemptions to claim a $5,000.00 exemption in the Regional stock. This is the statutory exemption limit and thereby moots QZO's objection as to this issue.

4

Debtor's post-petition services.

## CONCLUSIONS OF LAW

Upon filing of a petition for bankruptcy relief, a bankruptcy estate is created. 11 U.S.C. §541(a). The scope of the estate is broad, and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1)[4]. The estate further includes "[p]roceeds, product, offspring, rents, and profits of or from property of the estate," subject to an important limitation: "except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. §541(a)(6).

> Section 541 embodies the essence of the Bankruptcy Code. It creates the bankruptcy estate, which consists of all of the property that will be subject to the jurisdiction of the bankruptcy court. Property belonging to the estate is protected from the piecemeal reach of creditors by the automatic stay of section 362. It is this central aggregation of property that promotes the effectuation of the fundamental purposes of the Bankruptcy Code: the breathing room given to a debtor that attempts to make a fresh start, and the equality of distribution of assets among similarly situated creditors, according to the priorities set forth within the Code.

5 Collier on Bankruptcy ¶541.01, 541-8.1 - 8.2 (L.King, 15th ed. 2007).

---

[4] Upon conversion, 11 U.S.C. §348(f) requires the Court to look-back at the filing of the original chapter 13 petition to determine the creation of the bankruptcy estate and what is included as property of the chapter 7 estate. See 11 U.S.C. §348(f)(1).

5

Debtor argues Regional's stock value has increased post-petition as a result of his efforts and therefore this increase is in fact earnings from services performed by Debtor after the commencement of the case and therefore excluded from his bankruptcy estate under §541(a)(6).  The Court disagrees with this analysis.

Debtor analogizes his situation to several employee stock options cases where the applicable courts held post-petition accruals of stock were earnings from services performed by individual debtors post-petition and were not property of the respective bankruptcy estates.[5]  See In re Allen, 226 B.R. 857 (Bankr. N.D. Ill. 1998); Stoebner v. Wick (In re Wick), 276 F.3d. 412, 416-17 (8th Cir. 2002); and In re Michener, 342 B.R. 428 (Bankr. D. Del. 2006).  However, unlike employee stock option cases, where a debtor's continued services are required for the options to become exercisable, Debtor, in this case, owned the stock outright at the commencement of his bankruptcy.  As the court in Michener states,

> "[w]here ESOs [employee stock options] are granted pre-petition, their exercise may be earned by pre-petition and post-petition efforts of the Debtor.  Accordingly, the realizable value of ESOs that become exercisable post-petition . . . must be divided

---

[5]  Debtor also cites In re Donnell, 357 B.R. 386 (Bankr. W.D. Tex. 2006), where the court apportioned a tax refund between debtors and trustee.  However, the Court finds this case unpersuasive as it does not address the earnings exception under §541(a)(6).

> between the estate and the Debtor on a <u>quantum meruit</u> basis: whatever percentage of the time required for exercise of each group of options had passed before [the Debtor] filed his petition in bankruptcy, that percentage of option value is allocated to the bankruptcy estate. Whatever percentage of the time required for exercise of the options passed after the date of [the Debtor's] petition in bankruptcy that percentage of the option value belongs to [the Debtor]."

342 B.R. at 431 [cites omitted]. In <u>Wick</u>, the court held a one third interest in employee stock options became property of the bankruptcy estate when debtor had worked only four months of her twelve month vesting period when she filed for bankruptcy. <u>Wick</u>, 276 F.3d. at 416-17. In the employee stock options cases, the contract contingencies require debtors' post-petition services resulting in these courts excluding the portion of the stock related to debtors' post-petition services from the respective bankruptcy estates.

In the case <u>sub judice</u>, Debtor had uncontingent, fully vested, ownership of the Regional stock when he filed his bankruptcy petition. In accordance with 11 U.S.C. §541(a)(1), this stock became property of Debtor's bankruptcy estate when he filed his bankruptcy petition. Any increase in value is profits or proceeds from property of the estate. Unlike the employee stock option cases, there is no contract contingency that needs to be satisfied

7

post-petition by Debtor.    Debtor's claim to the stock is attributable solely to his ownership in a non-debtor corporation, it is not contingent upon, and there is no requirement of, post-petition services to be personally performed by Debtor.

Most of the cases interpreting the earnings exception of §541(a)(6) state *wages or salaries* earned from services or labor performed post-petition are excluded from a debtor's bankruptcy estate.  See, e.g. <u>Roland v. Unum Life Ins. Co. of America</u>, 223 B.R. 499 (4th Cir. 1998)(stating the interpretation of §541(a)(6) is quite clear, the fourth circuit allows debtors to exclude "any *compensation or salary* [they] might earn after the petition date"); <u>Matter of Clark</u>, 891 F.2d 111, 115 (5th Cir. 1989)(holding *salary* received post-petition may not be considered as property of the estate); <u>In re Bible</u>, 110 B.R. 1002, 1007 (Bankr. S.D. Ga. 1990)(stating under §541(a)(6) a debtor's chapter 11 estate "would not include any *salary* he received for his services . . . unless specifically included by statute").  In the current case, Debtor receives a salary of approximately $75,000.00/year.  The portion of this salary accruing from Debtor's post-petition services is excluded from property of the estate under the earnings exception of §541(a)(6); however, the purported increase in stock value does not equate to earnings from services performed.

8

In the context of a sole proprietorship, the Ninth Circuit Court of Appeals rejected the concept that all post-petition earnings of a sole proprietorship were excluded from property of the estate. See, In re FitzSimmons, 725 F.2d 1208 (9th Cir. 1984). The FitzSimmons court held §541(a)(6) excepts from the estate only those earnings generated by services *personally* performed by the individual debtor and further held "to the extent that the law practice's earnings are attributable not to FitzSimmons' personal services but to the business' invested capital, accounts receivable, good will, employment contracts with the firm's staff, client relationships, fee agreements, or the like, the earnings of the law practice accrue to the estate." FitzSimmons, 725 F.2d at 1211; See also In re Cooley, 87 B.R. 432 (Bankr. S.D. Tex. 1988); cf In re Herberman, 122 B.R. 273 (Bankr. W.D. Tex. 1990).

Even if the Court were to entertain Debtor's argument that post-petition stock value increases can constitute "earnings from services", Debtor has not identified any specific post-petition services he performed that increased the value of Regional's stock. While Debtor testified he is "hands on" he also testified Regional has approximately 120-130 employees and he personally did not answer or respond as a driver or EMT on any of the calls received in 2005 or 2006 and he never worked as a dispatcher in 2005 or 2006. The

9

Court acknowledges Debtor may have procured contracts for Regional but he has not shown which contracts were acquired post-petition. The mere fact that contracts are canceled with thirty days notice, does not equate to acquiring new contracts every thirty days.

Also, Debtor's argument overlooks other factors that contribute to Regional's stock value. The stock value is more than Debtor's services, it is the value of physical assets, work of EMTs, public relations personnel/other employees and general goodwill. See In re Prince, 85 F.3d 314, 322 (7th Cir. 1996); In re Thomas 231 B.R. 581, 588 (Bankr. E.D. Pa. 1999)(holding goodwill is not excluded from the estate under the earnings exception because unlike a doctor or lawyer, the services debtor performed do not involve type of individualized and specialized skill and judgment incapable of being transferred); In re DeSoto 181 B.R. 704 (Bankr. D. Conn. 1995)(holding debtors failed to show by a preponderance of evidence the increase in value was due to their post-petition services).

In In re Thomas, 231 B.R. 581 (Bankr. E.D. Pa. 1999), a Chapter 13 debtor owned a courier business where the debtor solicited customers and personally received calls and arranged for deliveries. The issue in Thomas was whether the value of an IRS tax lien on debtor's stock in his company "can be influenced by the

10

company's goodwill and going concern value where the measure of these items is based upon and will be paid out the company's post-petition income." <u>Thomas</u>, 231 B.R. at 585.   The debtor argued his income from his company arose from his personal services and was therefore excepted from property of the estate under the earnings exception of §541(a)(6).   The court rejected this argument and stated:

> [i]t is clear that the goodwill and going concern value of the business are rooted in [the debtor's] prepetition efforts to develop a rapport with customers and build his business.   The present value of the business may be measured by the company's ability to earn income in the future, but the ability to produce that income is the product of past effort.   [The debtor's] assertion that [his company's] future earnings represent a purely postpetition asset is faulty to the extent it overlooks the prepetition effort that went into the creation of [the company] and its current goodwill with customers.

<u>Thomas</u>, 231 B.R. at 587.

Like the debtor in <u>Thomas</u>, Debtor's pre-petition efforts to build his business cannot be overlooked.   Debtor has not shown what contracts or new customers he personally acquired post-petition.   The increase in stock value is sufficiently rooted in Debtor's pre-petition efforts to render it part of his bankruptcy estate.   Income sufficiently rooted in debtor's pre-bankruptcy past is property of the estate even when it is received post-petition.   <u>See</u> <u>Segal v.</u>

11

✎AO 72A
(Rev. 8/82)

Rochelle, 382 U.S. 375, 380, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966); In re Andrews, 80 F.3d 906, 910 (4th Cir 1996); In re Thomas, 231 B.R. 581 (Bankr. E.D. Pa. 1999).

Similar to the case sub judice, in Armstrong, 73 B.R. 143 (Bankr. N.D. Tex. 1987), the debtor owned a sole proprietorship and was found by the court to be more of an executive director in charge of overseeing, managing and protecting his property.  The debtor did not present any evidence that any of his post-petition personal services contributed to monies received post-petition and therefore the court determined these funds were property of the estate which could not be excluded under the earnings exception.  Armstrong, 73 B.R. at 145-46.  See In re Bernheim, 62 B.R. 739, 742 (Bankr. D.N.J. 1986)(holding debtor could not receive his portion of real estate commissions under §541(a)(6), as such commissions were paid to the corporation and could only be characterized as a distribution of profits from a company which is property of the estate).

The plain reading of the statute provides for a narrow exception for earnings derived from post-petition services, not profits from business.  Debtor's $75,000.00 salary accruing post-petition constitutes earnings from post-petition services, but an increase in stock value is not earnings from services personally performed by Debtor.

The vast majority of cases analyzing the earnings

12

exception of §541(a)(6) involve professional service businesses--doctors, lawyers or commission-driven businesses--where individual financial production is more easily traceable and extractable from the production of the whole.   FitzSimmons, 725 F.2d at 1208 (lawyer); In re Cooley, 87 B.R. 432 (Bankr. S.D. Tex. 1988))(surgeon); In re Sholdra, 270 B.R. 64 (Bankr. N.D. Tex. 2001)(ophthalmologist).  In the current case, Debtor's post-petition efforts cannot be separated from the efforts of the whole--employees, goodwill, nor can it be separated from pre- vs. post-petition efforts and returns.

At the hearing and in post-hearing briefs, Debtor vigorously argued because Regional (which is not in bankruptcy) is a subchapter-S corporation, Debtor's earnings equate to Regional's corporate earnings.  Seizing on the pass-through tax treatment of profits and losses in sub-S corporations, Debtor argues the increase in Regional's stock value seamlessly passes through to Debtor, Regional's sole shareholder.  However, Debtor by subsequent letter has informed the Court that the IRS does not have any evidence that Regional ever filed its sub-S election.   See Dckt. #287. Apparently, Regional has been filing its tax returns as though it is a sub-S corporation, when in fact, Regional has never made a sub-S election.   In order to obtain sub-S tax treatment, the sub-S election must be made through the timely filing of a specific IRS

13

form (Form 2553); merely filing tax returns reflecting sub-S treatment is not sufficient to obtain sub-S treatment. See 26 C.F.R. §1.1362-6. "Regional . . . does not have any evidence that it ever timely filed [its sub-S election]. Regional has not done anything toward working on this problem because it hoped that the bankruptcy would be over and done with as that was perceived to be to debtor's advantage." Id. Therefore, to the extent Debtor's argument is based upon Regional's purported sub-S status, it fails as factually inaccurate.

Debtor also blurs the legal distinction between himself and his business. Regional is a South Carolina corporation that is not in bankruptcy. Debtor and Regional are separate legal entities and the profits of Regional belong to the corporation. See this Court's previous Order, Dckt. #105 (holding the automatic stay does not protect Regional's assets, a separate legal entity from Debtor). Section 541(a)(6) by its plain language speaks of earnings from services performed by an *individual* debtor as opposed to a non-debtor corporation. As the Court in Cooley explained:

> Congress's use of the term "individual" in the earnings exception was not to distinguish between the individual and the sole proprietorship, but to distinguish between an individual on the one hand and a corporation or partnership on the other. Its concern, as illustrated by the legislative history of Chapter 13, was to avoid any conflict with the Thirteenth Amendment's prohibition against involuntary servitude. A corporation or partnership, though protectable under the

14

> Bankruptcy Code, are not protectable entities
> under the Thirteenth Amendment and its
> provision barring involuntary servitude.

See In re Cooley, 87 B.R. 432, 440 (Bankr. S.D. Tex. 1988).

The stock is property of the estate and any increase in its value is property of the estate as profits or proceeds from property of the estate under §541(a)(6). See In re Paolella, 85 B.R. 974, 977 (8th Cir. 1988)(stating because a sale rarely simultaneously occurs with the filing of the petition, §541(a)(6) mandates the estate receive the value of the property at the time of the sale which may include appreciation); See In re Potter, 228 B.R. 422, 424 (8th Cir. B.A.P. 1999) (stating change in asset value is not within the purview of the earnings exception, it is appreciation). For these reasons, the Court finds any post-petition increase in Regional's stock value is property of Debtor's bankruptcy estate.

### Restraint on Trade and Covenant Not to Compete.

As a final argument, Debtor avers the sale of his 100% ownership interest in Regional to QZO by the Trustee would be contrary to Georgia law as a conspiracy in restraint on trade in violation of O.C.G.A. §13-8-1[6] and §13-8-2(a)(2).[7]

---

[6]   O.C.G.A. §13-8-1 states in pertinent part:

> A contract to do an immoral or illegal thing is
> void. If the contract is severable, however,
> the part of the contract which is legal will
> not be invalidated by the part of the contract

15

which is illegal.

[7]   O.C.G.A. §13-8-2(a)(2) states in pertinent part:

(a) A contract which is against the policy of
the law cannot be enforced.  Contracts deemed
contrary to public policy include but are not
limited to:

.

.

.

(2) Contracts in general restraint of
trade, as distinguished from contracts in
partial restraint of trade as provided for in
Code Section 13-8-2.1

The Court notes that Regional is a South Carolina
corporation.  South Carolina has a similar code against
restraint on trade which states:

All arrangements, contracts,
agreements, trusts or combinations
(a) between two or more persons as
individuals, firms or corporations,
made with a view to lessen, or which
tend to lessen, full and free
competition in the importation or
sale of articles imported into this
State or in the manufacture or sale
of articles of domestic growth or of
domestic raw material, (b) between
persons or corporations designed or
which tend to advance, reduce or
control the price or the cost to the
producer or consumer of any such
product or article and (c) between
two or more persons as individuals,
firms, corporations, syndicates or
associations that may lessen or

16

Debtor argues further that the Trustee owes a fiduciary duty to the creditors of non-debtor Regional and cites <u>Commodity Futures Trading Com'n v. Weintraub</u>, 471 U.S. 343, 105 S.Ct 1986, 85 L.Ed.2d 372 (1985), where the Supreme Court states a trustee's fiduciary duty involving a bankrupt corporate debtor runs to shareholders as well as to the creditors.   Debtor argues if the Trustee enters an agreement to sell the stock to QZO and QZO does not assume the debt of Regional then Regional's creditors will be defrauded.  This argument misses the key point that Regional is not the debtor in bankruptcy to which the Trustee owes any fiduciary duty.  <u>See</u> 11 U.S.C. §323(a); <u>Fisher v. Apostolou</u>, 155 F.3d 876 (7th Cir. 1998)(stating Trustee has sole responsibility to represent bankruptcy estate to marshal assets for benefit of bankruptcy estate's creditors); <u>Accord</u> <u>In re Obie Elie Wrecking Co., Inc.</u>, 35 B.R. 114, 115 (Bankr. Ohio 1983) (stating Trustee is not agent of debtor but represents estate, managing the estate's funds for benefits of the *estate's* creditors).  Furthermore, the Trustee has not submitted a motion to sell the stock to QZO and is under no

---

affect in any manner the full and free competition in any tariff, rates, tolls, premium or prices in any branch of trade, business or commerce are declared to be against public policy, unlawful and void.
S.C. Code Ann. §39-3-10 (1985).

17

obligation to sell the stock to QZO.  The only issue currently before the Court is the Trustee's motion to sell the stock to Debtor and there is no allegation that this proposed sale constitutes a restraint or trade.  For these reasons, the Court does not find a restraint of trade exists by the mere denial of Trustee's pending motion to sell the Regional stock to Debtor.

## II.  **Expert Testimony**.

At the March 23, 2007 hearing, QZO objected to the Debtor's proffered expert, Davenport Davison, Jr., arguing he was not qualified to testify as an expert on the value of Regional because he was not a certified business appraiser.  Mr. Davenport has an accounting degree from the University of Georgia.  He held an active CPA license from 1967 to 1993 and has been a real estate and business broker from 1983 to present.  He testified, as a business broker, he has engaged in valuations of businesses for clients purchasing/selling businesses and has been involved in numerous substantial business sales.  He also testified he has previously testified as an expert in the Southern District of Georgia; however, he could not recall the specific case.  At the hearing, he described in great deal the methods he used to value Regional.

Under Federal Rule of Evidence 702, ". . . a witness qualified as an expert by knowledge, skill, experience, training, or

18

education may testify . . . if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." See Fed. R. Evid. 702.  Therefore, according to Rule 702, expert testimony is only admissible if it satisfies three broad requirements: (1) the witness offering the testimony must have knowledge, skill, experience, training, or education that qualifies the witness as an expert; (2) the witness's opinions must be reliable; and (3) the witness's opinions must assist the trier of fact.  Goforth v. Paris et al., 2007 WL 988733 *3 (M.D. Ga. 2007).  "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence."  Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

As for the first factor, a witness's qualifications must correspond to the subject matter of his testimony.  See Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999).  In the current case, the Court finds, based upon his education and experience, Mr. Davison is qualified to testify as an expert in the valuation of Regional.

As to the second factor, reliability, the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579, 113 S.Ct. 2786

✎AO 72A
(Rev. 8/82)

(1993) provided a non-exclusive, non-exhaustive list of four factors to consider when assessing this issue: (1) whether the theory or technique can be tested; (2) whether it has been subjected to peer review; (3) whether the technique has a high known or potential rate of error; and (4) whether the theory has attained general acceptance within the scientific community. <u>Daubert</u>, 509 U.S. at 593-94. "The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171 (1999). In most cases, the expert's testimony "must be grounded in an accepted body of learning or experience in the expert's field and the expert must explain how the conclusion is so grounded." Fed. R. Evid. 702 advisory committee's notes (2000 amendment); <u>See</u> <u>Cerretani v. Cerrentani</u>, 289 A.D.2d 753 (N.Y. App. Div. 2001)(holding trial court did not abuse its discretion in allowing an expert who by his business experience and training was qualified to testify as an expert). In <u>Cerretani</u>, the court stated "valuing a closely-held corporation is a complex matter for which there is no uniform rule." <u>Id</u>. at 754. In the current case, the Court finds Mr. Davison's testimony reliable as to the valuation of Regional as subchapter-S corporation but gives his testimony no weight because subsequent to the hearing, the Court has

20

been informed that the IRS does not have any evidence that Regional has filed its sub-S election.[8] See In re TMI Litigation, 193 F.3d 613, 692 (3rd Cir. 1999)(expert testimony need not be correct so long as the expert testimony rests upon good grounds, it should be tested by the adversary process); Liquid Dynamics Corp. v. Vaughan Co., Inc., 449 F.3d 1209, 1221 (Fed. Cir. Ill. 2006) (stating that challenge to expert testimony based upon reliance upon inaccurate data goes to the weight of the evidence rather than to the admissibility).

As to the third factor, the expert testimony must assist the trier of fact. Expert testimony is admissible if it concerns matters that are beyond the understanding of lay persons. United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004). Valuation of closely-held companies, is beyond the understanding of lay persons. See Cerretani, 289 A.D. at 754 (stating "valuing a closely-held corporation is a complex matter for which there is no uniform rule"). The testimony of Mr. Davison as to the valuation of Regional's stock was beyond the understanding of lay persons and required an expert. Under this test, the Court finds his testimony admissible.

QZO also objected to the admissibility of the Alford Report. The Alford Report is a report prepared, interestingly

---

[8] In fact counsel's letter states much of the data relied upon, income tax returns may have to be re-done.

enough, for QZO to be used in separate non-bankruptcy litigation between Debtor and Regional.    Now, QZO is objecting to its admittance in this forum.    Prior to Debtor's bankruptcy, he was employed at QZO.  He left QZO and formed Regional.   The Report provides detailed analysis of Debtor's economic impact to QZO while employed there and the impact of his leaving QZO.   Mr. Davison testified he relied in part on the Alford Report in forming his opinion as to the going concern value of Regional.   While, normally the Report itself would be inadmissible under Federal Rule of Evidence 703 as hearsay, the Court finds it is admissible to explain the basis of Mr Davison's opinion, not as substantive evidence.   See Ferrara & DiMercurio v. St. Paul Mercury Ins. Co., 240 F.3d 1,9 (1st Cir. 2001) (stating expert reasonably relied on opinion of other expert but formed his own opinion and reliance goes to the weight of the evidence not the admissibility).

### Conclusion

For the reasons discussed above, the Court finds any increase in Debtor's stock value in Regional is property of the bankruptcy estate and not excluded therefrom by the earnings exception of §541(a)(6).   Therefore, it is ORDERED that the Trustee's Motion to Sell is DENIED and QZO's Objection to the Motion

AO 72A
(Rev. 8/82)

to Sell is GRANTED.  It is further ORDERED that QZO's objections to the expert testimony and the Alford Report are OVERRULED.

_____
SUSAN D. BARRETT
UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia

this 12th day of September, 2007.

23

**AO 72A**
(Rev. 8/82)